## Erwin's Appeal.

*Real Estate owned by Partners, when Partnership Property.*

1. One partner of a firm engaged in distilling, bought a lot adjoining their distillery, with the intention of using it for business purposes, paying for it with the money of the firm, but taking title in his own name. The lot was not used as intended. Upon the distribution of the proceeds of the sheriff's sale of the lot, it was *held*, that the lot was partnership property; that the partners were not tenants in common; and that the decree of the court, awarding the proceeds, to the judgment of an individual creditor of one of the firm, was error.

2. It is not enough, to convert the partners into tenants in common, that the lot was not *necessary* for the business of the partnership. If acquired for such a purpose, with the joint funds, it became a part of the joint property, though the business could have been carried on without it.

3. The lot having been purchased and held for partnership purposes, judgments against the firm for partnership debts are payable out of the proceeds in preference to judgments against the parties individually.

APPEAL from the Common Pleas of *York county.*

This was an appeal by Peter Erwin from the decree of the court below, distributing the proceeds of the sheriff's sale of the real estate of Henry Imhoff and Jacob Myers, doing business as Imhoff & Myers.

Imhoff & Myers were partners, engaged in the business of distilling whiskey and feeding stock in York county, having commenced some time in 1840, at which time they purchased a lot, on which they erected their distillery.

On the 3d of April 1848, Myers purchased an adjoining lot for the use of the firm in their business. The deed was taken in the name of Myers, but it was paid for with partnership funds, and though not used for the purpose for which it was purchased, it was held and used in all respects as partnership property.

On the 21st of July 1857, A. D. Ditmars recovered a judgment against Henry Imhoff for $2000. August 3d 1857, Peter Erwin recovered a judgment against Imhoff & Myers for $2099.68, and John Fisher one on same day against Imhoff & Myers for $1552.50, both of which were confessed by Myers for partnership debts.

On the 30th of September 1858, George W. Wantz entered in the Common Pleas the transcript of a judgment against Imhoff & Mentz, on which execution was issued, and in due time

[Erwin's Appeal.]

the lot which had been purchased in 1848, as above stated, was sold, and the proceeds brought into court for distribution. The auditor distributed to A. D. Ditmars one-half the net proceeds of sale on his judgment against Imhoff, on the ground that the lot, though purchased with partnership funds, was not necessary for partnership purposes, under the ruling in Coder & Peterman *v.* Huling, 3 Casey 84. The other half he divided *pro rata* between Erwin and Fisher, on their liens against the firm; for whom exceptions against the confirmation of the report were filed.

The court below, without delivering any opinion, dismissed the exceptions and confirmed the report. The case was then removed into this court, where the decree of the court below in the premises was assigned for error.

*E. H. Weiser,* for appellant, argued that the lot was held by the defendants in the execution, not as tenants in common, but as partners, and for partnership purposes, and that, therefore, partnership judgments were payable out of the proceeds, in preference to judgments against the individual partners; citing Overholt's Appeal, 2 Jones 222.

That it was necessary for partnership purposes, and so used, that the finding of the auditor that it was not so, will not be deemed conclusive in opposition to the palpable facts of the case; and that, even if the auditor had not erred in his statement of the facts of the case, it was not within the meaning of Coder *v.* Huling, on which he had decided it.

*Evans & Mayer,* for appellee.—Ditmars' judgment was a lien on the real and equitable interest of Imhoff in this lot, from the day it was entered: Reed's Appeal, 1 Harris 476. Myers held the lot for the use of those who had paid purchase-money; it was not necessary for partnership purposes, and the owners were, therefore, tenants in common: Coder *v.* Huling, 3 Casey 84. The finding of facts by the auditor is conclusive: Ake's Appeal, 9 Harris 320; Gibson's Appeal, 1 Casey 191. The appellant's judgment was confessed by Myers, and bound none but him: Grier & Co. *v.* Hood, 1 Casey 430; York Bank's Appeal, 12 Id. 458; and if the lot was held in trust, he would not be benefited by it.

The opinion of the court was delivered, June 7th 1861, by

STRONG, J.—The fund for distribution arises out of the sale of a lot, the legal title of which was in Jacob Myers, one of the partners in the firm of Imhoff & Myers. It was purchased and paid for with the money of the firm, and it was used by the firm until the time of the sheriff's sale. The auditor has found, how-

ever, that it was "not necessary for the partnership purposes," and, therefore, relying upon Coder v. Huling, 3 Casey 84, he has distributed one-half of the proceeds of the sale to a judgment-creditor of Imhoff in preference to junior judgment-creditors of the firm. His distribution was confirmed by the court, and hence this appeal. We think Coder v. Huling was misunderstood. That case and the present are very unlike. There as here, indeed, one partner purchased and took the deed in his own name, and paid for the land with the partnership funds, but the purchase was not only not necessary for the business of the partnership, but entirely disconnected from it. The business of the firm was storekeeping, the purchase was for the erection of saw-mills and lumbering operations. The purposes of the investment were, therefore, entirely foreign to the particular business in which the firm was engaged. But here, though the auditor reported that the land was not necessary for partnership purposes, he has not found that it was bought with views and purposes beyond and outside of the particular business in which the firm was engaged; and the evidence abundantly shows that the purchase was made to facilitate and render more convenient that business. The firm was engaged in distilling, and the lot adjoined their distillery. It was bought for an enclosure for the hogs to be fed at the distillery. Owing to a cause not foreseen, it was not used for that purpose; but if the beneficial interest was vested in the firm by the purchase, the subsequent use, different from what was originally contemplated, would not divest it. The altered uses were still for the firm. It was farmed at the expense of the firm, its profits went into the firm, and it was in all respects treated as partnership property. There was nothing, then, either in the views with which the lot was bought, or in its subsequent use, to take the purchase out of the rule, that the beneficial interest in land follows the ownership of the money which was paid for it. Had the title been taken to both Imhoff and Myers, without any assertion on its face that it was treated by them as partnership property, under the ruling in Hale v. Henrie, 2 Watts 143, and several subsequent cases, they would have been but tenants in common. The absence of such an assertion would have been evidential that the partners did not intend to bring the property into partnership stock, but that they intended to take separate interests. But the legal title was conveyed to Jacob Myers alone. We are now looking for the use. With the intention to buy for the firm, with nothing to indicate a severance of interests, and with the fact that the joint funds paid for the lot, it must be that the beneficial interest was in the firm as such.

Upon what ground, then, was the judgment of Ditmars against Imhoff a lien? He could only have sold the interest of Imhoff

in the firm, and that was personal, not subject to a lien. The title papers exhibited no interest in his debtor. At most he had a mere equity, and that subservient to the right of the copartner, that the firm property, in whatever shape it might be, should be applied first to the payment of the partnership debts. In Overholt's Appeal, 2 Jones 222, it was held, that where real estate has been purchased for partnership purposes, and has been so held, judgments against the firm for partnership debts are payable out of the proceeds of a sheriff's sale, in preference to judgments against the partners individually.

The appellee suggests a doubt whether, if Myers held the property in trust for the firm, and not the partners individually, it would help the appellant, because the judgments against the firm were confessed, as he alleges, by Myers alone. This does not appear on the record as exhibited to us; but assuming that such is the fact, it is not for Ditmars to object to them, or to claim that they are not judgments against the firm. It is only a nonassenting partner that·can call in question the validity of a judgment confessed by his copartner for a firm debt: Grier v. Hood, 1 Casey 430. Such a judgment is not void. Under it the property of the partnership may be sold, and the proceeds be claimed by the creditor.

In considering this case, we are not to lose sight of the fact that it is not a controversy between the partners themselves, but between the creditors of the firm and a creditor of an individual partner.

Upon the whole, we think that the lot, having been bought with the money of the firm, and with views and purposes in furtherance of its business, must be regarded as partnership property. It is not enough to convert the partners into tenants in common, that the lot was not necessary for partnership purposes. If it was acquired for such purposes with the joint funds, it became a part of the joint property, though the business could have been carried on without it.

> The decree of the Court of Common Pleas is reversed, and the money in court is ordered to be distributed, first to the judgment of George W. Wantz, $92.92 (this appropriation being made by the consent of the appellants), and the remainder is decreed, *pro rata*, to the judgments of Peter Erwin and John Fisher, and it is ordered that the costs in this court be paid by the appellee.

WOODWARD, J., dissented.