# Lefevre's Appeal.

1. As to strangers, mortgagees, purchasers and creditors, the agreement of partners, to make real estate part of the common stock, must be in writing and ought to be on record.

2. If, with the acquiescence of the members of a firm, partnership funds are applied to the purchase of real estate in the name of one member, there is no resulting trust.

3. Partners may agree that any member may withdraw any part of the common stock; such part will then become his own.

4. It is because each partner has an equity to insist upon the application of partnership debts, that joint creditors have priority over separate creditors.

5. It is not competent to show by parol that real estate conveyed to two as tenants in common, is partnership property.

6. McDermat *v.* Lawrence, 7 S. & R. 433, recognised.

7. Erwin's Appeal, 3 *Wright* 535; Hale *v.* Henrie, 2 *Watts* 143; McCormick's Appeal, 7 P. F. Smith 54, considered.

May 12th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Lefevre's Appeal.]

Appeal from the Court of Common Pleas of *Cumberland county :* No. 106, to May Term 1871.

The proceedings in the court below were in the distribution of a fund arising from a sheriff's sale of real estate under an execution at the suit of The Goodyear Rubber Belting and Packing Company, against Gilson Smith, John Smith and John Gribble, trading as Gilson Smith & Co. The fund was claimed by the creditors of Gilson Smith & Co. as the proceeds of partnership property of the firm, and by the individual creditors of Gilson Smith and John Gribble as the individual property of Smith and Gribble.

The distribution was referred to M. C. Herman, Esq., as auditor, who reported, "That Gilson Smith and John Gribble in 1846 began the business of manufacturing threshing machines, which they carried on under the name of Gilson Smith & Co.; until 1852, when they rented the property in dispute, having a foundry erected on it.

" There they associated with themselves George Tarman, and began and carried on the foundry business, under the name of ' Smith & Tarman,' and here, also, they continued their old business, under the old name of ' Gilson Smith & Co.' George Tarman never was a member of the firm of Gilson Smith & Co. He was only a partner in the foundry. In 1854, two years after they had rented, Gilson Smith and John Gribble purchased and obtained the *fee simple* title to this foundry property, for which they were to pay $1500; of which they paid $500 on the delivery of the deed, and the balance in three annual instalments, for which they gave their obligation in writing, and on which judgment was entered to No. 132, of April Term 1854, against ' John Gribble and Gilson Smith,' in favor of ' Barnet A. Wolf.' On the 19th of June 1857, this judgment was satisfied in full. The deed is dated May 5th 1854, and is from B. A. Wolf and wife, to ' John Gribble and Gilson Smith, and their heirs and assigns, &c.' The deed has never been recorded. George Tarman retired from the firm of ' Smith & Tarman ' in 1855, after which, in the same year, John Smith was admitted as an equal partner in the foundry, and the following year, in all the business, both in that of the foundry and the manufacture of agricultural implements. From the time of the admission of John Smith, the entire business was carried on in the name of ' Gilson Smith & Co.,' until the time of the sheriff's sale, on the 11th of March 1870. After the purchase of the property, machine-shops were erected on it, improvements made, and the business of the firm of ' Gilson Smith & Co.' enlarged and increased.

" Some of the money thus expended in building and improvement, came out of the firm business, and part out of the separate estates of Gilson Smith and John Gribble. During the first year

[Lefevre's Appeal.]

of John Smith's association with the firm, he worked at the manufacture of reapers as a laborer, and received wages for his services; but after the first year, when he became a full partner in all the business, he received an equal share of all the profits as an equal partner. The balance of the purchase-money, $1000, due on the property, was paid out of the proceeds of the business, the last two instalments of which were paid after John Smith became a member of the firm. John Smith never paid anything for his interest in the partnership. George Tarman paid nothing when he went in, and received nothing for his interest when he went out, except that the remaining members of the firm assumed the firm indebtedness. Improvements to the value of about $300 were made on the property before the admission of John Smith. Gilson Smith says in his testimony: 'John talked about purchasing a deed of the real estate; he never did purchase; * * * there was never any definite arrangement about John Smith taking a share of the real estate; we never had a final settlement; it was agreed that he was to have one-third of the property as soon as we had a final settlement, and he paid for it; John Smith never paid any rent, and no rent was asked for it; * * * we never had any regular settlement; we just run the business along, kept our families, and kept up the repairs out of this business; * * * the expenses of keeping up the business, as far as they were paid, were paid out of the business." Again he says: 'John Smith never paid me any rent for his interest in the property; I think we would have required him to have made up his proportion of the rent, if on a final settlement he would have taken an interest in the real estate; there was no positive contract about him taking a share in the real estate; two years ago he became dissatisfied with the way the business was being carried on, and he said he wanted to know what he was doing, or going to do, or something to that amount; we told him if he would go on, and we would have a settlement, why of course he could have a one-third interest, if it was coming to him.' At the first triennial assessment made after the purchase of this property, it was assessed as the property of 'Smith & Gribble,' and continued to be so assessed down to the time of the sheriff's sale."

He awarded the fund to the individual creditors of Gilson Smith and John Gribble.

Upon exceptions the Court of Common Pleas confirmed the report of the auditor.

David Lefevre, one of the creditors of Gilson Smith & Co., appealed and assigned for error the confirmation of the auditor's report.

*F. G. Sadler* (with whom was *L. Todd*), for appellants, cited Lacy *v.* Hall, 1 Wright 360; North Penna. Coal Co.'s Appeal, 9

[Lefevre's Appeal.]

Id. 181; Hoxie v. Carr, 1 Sumner 190; Bank v. Myley, 1 Harris 544; Abbott's Appeal, 14 Wright 234; Parsons on Contracts, vol. 1., ch. 12, § 2; 3 Kent 38; Smith v. Smith, 5 Ves. 189.

J. A. McCune and W. H. Miller (with whom was J. R. Miller), for appellees, cited McCormick's Appeal, 7 P. F. Smith 59; Hale v. Henry, 2 Watts 143; Ridgway, Budd & Co.'s Appeal, 3 Harris 177.

The opinion of the court was delivered, May 25th 1871, by

SHARSWOOD, J.—The subject of partnership in real estate was before this court in the early case of McDermat v. Lawrence, 7 S. & R. 438, and the principles of law in relation to it, enunciated and explained by Chief Justice Tilghman in a luminous and exhaustive opinion. He examined all the authorities in England and this country, and the conclusion at which he arrived was, that as to strangers,—purchasers, mortgagees and creditors,—the agreement of partners to make real estate part of the common stock, must be evidenced by writing, and that it ought to be put on record, so as to give notice to the world; otherwise, where the deed is in their individual names, they will hold as tenants in common. The decision in this case was affirmed and applied in Hale v. Henrie, 2 Watts 153; Lancaster Bank v. Myley, 1 Harris 544; Ridgway, Budd & Co.'s Appeal, 3 Id. 177; Kramer v. Arthurs, 7 Barr 170. In Lacy v. Hall, 1 Wright 360, and Erwin's Appeal, 3 Id. 535, the land was bought by one partner in his own name with partnership funds; and it was held that the equitable interest was in the firm, and in the latter case, the proceeds of a sheriff's sale were distributed accordingly. "Had the title," said Mr. Justice Strong, in Erwin's Appeal, "been taken to both Imhoff and Myers without any assertion on its face that it was treated by them as partnership property, under the ruling in Hale v. Henrie, 2 Watts 143, and several subsequent cases, they would have been but tenants in common; the absence of such an assertion would have been evidential that the parties did not intend to bring the property into partnership stock, but that they intended to take separate interests." The principle of these cases was, that such a purchase by one partner raised a resulting trust which was within the exception of the Statute of Frauds, and that the former cases grounded upon the provisions of that statute did not apply. It would, of course, follow logically, that when a partnership consisted of three or more, a purchase with partnership funds in the names of two or any less number than all, would on the same reason enure beneficially to the firm. It is to be remarked, however, that in these cases there was nothing from which it was to be inferred that the other member of the firm acquiesced in the appropriation of the common funds to the

purchase in the name of the individual member.  For him to claim to hold it as his private property, without the consent of his associate, was in fact a fraud.  Partners have an unquestionable right to deal with the funds of the firm as they please; and, if, with their consent or knowledge and acquiescence, a portion of their funds is applied to the purchase of real estate in the name of an individual member, and as his private property, there is in such case no resulting trust.  The partners may agree among themselves, that any one member may withdraw any part of the common stock, and such part will then become his own; and it matters not how he invests it, even though it be in real estate to be used for the purposes of the firm.  He is charged or chargeable with what is so withdrawn and appropriated in account.  So if, with the knowledge and consent of all the partners, partnership funds are applied to the improvement of the real estate of one or more members of the firm.  The equity of the joint creditors can only be worked out through the equities of the respective partners.  It is because each partner has an equity to insist upon the application of the partnership property in the first instance to the payment of the firm debts, for which each is liable *in solido*, that the joint creditors have any preference or priority over the separate creditors of each.  When the partners, during the continuance of the firm, have all agreed to the appropriation of the funds to the purchase or improvement of real estate in the private name or names of one or more of the partners, no one of them has any equity to have such property applied to the joint debts; and it follows that the joint creditors have no such equity.  It is contended, however, that in McCormick's Appeal, 7 P. F. Smith 54, a different principle is laid down, and that in all cases, when during the existence of the partnership the funds of the firm are applied to the purchase or improvement of real estate, there is a resulting trust for the firm.  If such be the doctrine of that case, it would overrule Hale *v.* Henrie, and the subsequent cases cited, which it not only does not profess to controvert or even doubt, but on the contrary expressly approves and affirms them.  In Hale *v.* Henrie the purchase was by the two partners during the partnership with the partnership funds; and Mr. Justice Sergeant said : "No averment of any right by parol, or by, what is still less, the nature of the fund which pays, or the uses or purposes the property is applied to, can be allowed to stamp a character on the title inconsistent with that appearing on the deed and record to the prejudice of third persons."  And again he uses this language, which is directly applicable to the present contention: "The money with which Capp and Henrie purchased the property was their own.  They could appropriate it as they pleased, and they chose to appropriate it to a purchase for themselves individually, and not as partners.  Having done so, it cannot be

defeated by proving otherwise than by deed or writing, that they held as partners." In Ridgway, Budd & Co.'s Appeal, the deed was to the partners in the firm name, but expressly as tenants in common; it was bought during the partnership, and with the partnership funds, and it was nevertheless held, that when partners intend to bring real estate into partnership, their intention must be manifested by deed or writing placed on record; and it is not competent to show by parol evidence, that real estate conveyed to two persons as tenants in common was purchased and paid for by them as partners, and was partnership property. "This is finally settled," said Mr. Justice Rogers. "In all such cases, parol testimony is totally disregarded." In McCormick's Appeal, Mr. Justice Strong indeed said: "Undoubtedly a partnership may hold real estate, and they may have a resulting trust when the partnership funds have paid for land. Such was the case of Erwin's Appeal, 3 Wright 535. So there may be a constructive trust in favor of a firm, as was held in Lacy v. Hall, 1 Wright 360; but these come within the exceptions to the Statute of Frauds. In both these cases, the lands were acquired after the partnership had been formed, and while the joint business was in progress. But here there is no resulting or constructive trust. The agreement, if there was any, to put the land into the joint stock, was made before the firm had any being, and the partnership funds did not pay for it. A parol agreement to put land into a firm, or to consider it as firm property, made before the firm exists, is wholly ineffectual to pass a title either in law or equity." It is clear that he did not mean to hold, that when without fraud, but with the knowledge and consent of all, partnership funds are applied to the purchase or improvement of the private property of one or more of the individual members of the firm, there would be a resulting trust for the firm, of which the joint creditors could avail themselves.

According to the facts of this case, as reported by the auditor in the court below, the real estate, the proceeds of which were in court for distribution, was purchased by Gilson Smith and John Gribble in their individual names, before the formation of the firm of Gilson Smith & Co. The cash payment on account of the purchase-money, and the first instalment, were paid by them before John Smith became a partner. He acquiesced in the subsequent appropriation of the firm funds to the payment of the balance, and to the expenditures made in improvements, knowing that it stood in the individual names of Gilson Smith and John Gribble. The money so taken and applied, if not actually charged, would be chargeable against them on final settlement. It was expressly agreed that John Smith was to have one-third of the property as soon as there was a final settlement, and he had paid for it. This parol agreement gave him no title, and if

it did, it would be as an individual. There was certainly nothing in this which would create a resulting trust for the partnership; and the distribution reported by the auditor, and decreed by the court below, was therefore perfectly right.

> Decree affirmed, and appeal dismissed at the costs of the appellant.