## Case No. 18,222.

### In re ZUG et al.

[16 N. B. R. 280; [1] 23 Int. Rev. Rec. 392; 34 Leg. Int. 402; 25 Pittsb. Leg. J. 29.]

Circuit Court, W. D. Pennsylvania. Sept. 22, 1877.

BANKRUPTCY PROCEEDINGS—ASCERTAINING CHARACTER OF ASSETS—PARTNERSHIP REAL ESTATE —APPEAL TO CIRCUIT COURT.

1. The bankrupt law [of 1867 (14 Stat. 517)] does not prescribe any rule or furnish any method for ascertaining the character of distributable assets. That is a subject of preliminary judicial inquiry, to be determined by legal principles of recognized controlling applicability.

2. As to questions touching the tenure of real estate, the federal courts are to be governed by the laws and decisions of local tribunals of the country where such real estate is situated.

3. Where real estate has been held by partners as tenants in common, the classification thereof as partnership assets. in the schedule filed by them, will not change the nature of the title to the prejudice of the rights of separate creditors.

4. An appeal to the circuit court is allowed only upon final decrees of the district court in a suit in equity by or against an assignee where the sum in controversy exceeds five hundred dollars.

Bill to review order of the district court distributing proceeds of sale of bankrupts' real estate.

McKENNAN, Circuit Judge. This controversy arises out of the distribution of the proceeds of sale of certain real estate of the

[1] [Reprinted from 16 N. B. R. 280, by permission.]

bankrupts, which are claimed, on one hand, by the partnership creditors, and on the other by the creditors of the individual members of the firm. This real estate was the product of partnership assets, was conveyed to Christian Zug, one of the partners, individually, was used in carrying on the firm business, and while being so used, Christian Zug conveyed to the remaining partner, Charles H. Zug, his heirs and assigns, one-fifth part of it. Both deeds were duly recorded, so that apparently C. Zug and C. H. Zug were tenants in common of the property in the proportion of four-fifths and one-fifth respectively. To which class of creditors is the fund produced by the sale of this real estate to be applied? The bankrupt law provides for the primary payment of the firm debts out of the partnership assets, and of individual debts out of the separate estate of each partner, but it does not prescribe any rule or furnish any method for ascertaining the character of distributable assets. That is a subject of preliminary judicial inquiry, the result of which must be determined by legal principles of recognized controlling applicability. The methods of acquiring and transferring title to real estate are peculiarly matters of local jurisprudence and regulation. "It is an acknowledged principle of law, that the title and disposition of real property is exclusively subject to the laws of the country where it is situated, which alone can prescribe the mode by which a title to it can pass from one person to another." McCormick v. Sullivant, 10 Wheat. [23 U. S.] 192. See, also, U. S. v. Crosby, 7 Cranch [11 U. S.] 116; Kerr v. Moon, 9 Wheat. [22 U. S.] 565; Clark v. Graham, 6 Wheat. [19 U. S.] 577; Darby v. Mayer, 10 Wheat. [23 U. S.] 465. Whatever rules, then, are established, either by statutory enactments or the decisions of local tribunals, touching the tenure of estate within their territorial jurisdiction, must be accepted as the law by which the federal courts, when they are called on to pass upon such questions, are to be governed. So the highest federal courts have repeatedly decided. In Jackson v. Chew, 12 Wheat. [25 U. S.] 162, says Mr. Justice Thompson, "The inquiry is very much narrowed by applying the rule which has uniformly governed this court, that where any principle of law establishing a rule of real property has been settled in the state courts, the same rule will be applied by this court that would be applied by the state tribunals. This is a principle so obviously just, and so indispensably necessary, under our system of government, that it cannot be lost sight of." So also said Mr. Justice Baldwin, in McQuesney v. Hiester, 9 Casey [33 Pa. St.] 444, note: "We must administer the jurisprudence of the state in this court as it bears on the rights of the parties, and decide them precisely as the courts of the state might." And again in Beauregard v. City of New Orleans, 18 How. [59 U. S.] 502, the court say,

"The constitution of this court requires it to follow the laws of the several states as rules of decision wherever they properly apply. And the habit of the court has been to defer to the decisions of their judicial tribunals upon questions arising out of the common law of the state, especially when applied to the title of lands. No other course could be adopted with any regard to propriety. Upon cases like the present the relation of the courts of the United States to a state is the same as that of its own tribunals. They administer the laws of the state, and to fulfill that duty, they must find them as they exist in the habits of the people, and in the exposition of their constituted authorities. Without this, the peculiar organization of the judicial tribunals of the state and the Union would be productive of the greatest mischief and confusion. Jackson v. Chew, 12 Wheat. [25 U. S.] 153."

These cases—and they have been consistently followed by numerous others—sufficiently show how firmly established in the federal courts is the rule of conformity to the decisions of the state tribunals in questions touching the title to real estate. By whatever tenure, then, the courts of this state would adjudge the real estate, represented by the fund in controversy, to have been held, so we must decide. And upon this subject the law of the state seems to be as well settled, by a series of long-adhered to decisions of its highest court, as is the rule which makes it our guide. From McDermot v. Laurence, 7 Serg. & R. 438, through a long train of decisions to Ebbert's Appeal, 20 P. F. Smith [70 Pa. St.] 79, the supreme court of the state has held, with unshaken constancy, that a recorded conveyance of title to real estate to the members of a partnership, as tenants in common, could not be charged, as to purchasers, mortgagees, and creditors, by parol evidence that it was purchased with partnership assets, and was used for partnership purposes, but that such a result could only be effected by an appropriate written instrument. In Hale v. Henrie, 2 Watts, 145, Mr. Justice Sargeant says: "No averment of any right by parol, or by what is still less, the nature of the fund which pays, or the uses or purposes the property is applied to, can be allowed to stamp a character on the title inconsistent with that appearing on the deed and record, to the prejudice of third persons. . . . In conformity, therefore, with the suggestion of Tilghman, C. J., in McDermot v. Laurence, after a review of the American and English cases on the subject (and, I think, in accordance with the course of legislation in Pennsylvania, on the modes of acquiring title to real estate), where partners intend to bring real estate into the partnership stock, we think that intention must be manifested by deed or writing, placed on record, that purchasers and creditors may not be deceived." This doctrine is reaffirmed in Ridgway, Budd &

Co.'s Appeal, 3 Harris [15 Pa. St.] 177; Kramer v. Arthurs, 7 Barr [7 Pa. St.] 170; Lancaster Bank v. Myley, 1 Harris [13 Pa. St.] 544; Cummings' Appeal, 1 Casey [25 Pa. St.] 268; Erwin's Appeal, 3 Wright [39 Pa. St.] 535; Lefevre's Appeal, 19 P. F. Smith [69 Pa. St.] 125; and Ebbert's Appeal, 20 P. F. Smith [70 Pa. St.] 79. In Lefevre's Appeal, Mr. Justice Sharswood reviews most of the cases on this subject, and demonstrates that the doctrine of Hale v. Henrie rests upon such a foundation of repeated authoritative recognition, that it must be regarded as the settled law of the state. After stating the principle upon which some of the cases apparently in conflict with Hale v. Henrie were decided, that the purchase of property by one partner in his own name, by the use of partnership assets, raised a resulting trust in favor of the firm, and that the equities of joint creditors could only be worked out through the equities of the respective partners, he says: "When the partners during the continuance of the firm, have all agreed to the appropriation of the funds to the purchase or improvement of real estate in the private name or names of one or more of the partners, no one of them has any equity to have such property applied to the joint debts; and it follows that the joint creditors have no such equity." This has peculiar applicability to the present contention. For although the title originally acquired by Christopher Zug was paid for with partnership assets, he subsequently conveyed to his copartner, Charles H. Zug, a share of it in exact proportion to his interest in the partnership stock. They thereby became tenants in common of the property, in relative proportions corresponding to their original equities, viz., partners, the trust, if there was any, ceased to exist, and no subsequent use of the property could change the character thus impressed upon the title. Neither of the partners, under these circumstances, would have any equity against the other to insist upon the application of the property, in the first instance, to the payment of firm debts, and so the joint creditors could not have any. Under the law of the state, it is clear, then, that down to the time of the bankruptcy, the real estate in question was not partnership property, but the separate property of Christopher and Charles H. Zug. It was agreed, however, that the classification of this real estate as partnership assets in the schedule filed by the bankrupts, had the effect of changing the nature of the title, and of converting what was before the separate property of the individual partners, into property of the firm. Independently of the reason upon which the rule of law before adverted to mainly rests, viz., the protection of strangers, purchasers, mortgagees, and creditors, and of the due registration of the instrument by which it might be sought to effect such a change, the argument is answered by the operation of the bankrupt law itself. By the terms of the act, the title of the trustees to all the bankrupt's property relates back to the date of the commencement of the bankruptcy proceeding. They took it impressed with the character with which it was invested at that time. They cannot change that character to the prejudice of any one's rights, much less can this be done by the bankrupts, after they have parted with all control over it, and it has passed in gremio legis for the benefit of creditors.

This court is therefore of opinion that the district court rightly adjudged the fund in controversy to be assets of the individual members of the firm of C. Zug & Co., and ordered its distribution accordingly; and that the bill of review must be dismissed at the cost of the complainants. An appeal was also taken from the order of the district court, which it is moved to quash. An appeal is allowed only upon final decrees of the court, in a suit in equity instituted by or against an assignee in bankruptcy where the sum in controversy exceeds five hundred dollars. As the record does not show that the order complained of was of that character or was made in any such suit, no appeal lies from it, and the motion to quash is, therefore, allowed.