### In re GROETZINGER.

(District Court, W. D. Pennsylvania. July 26, 1901.)

No. 44.

BANKRUPTCY—INDIVIDUAL AND FIRM ASSETS.

As between the creditors of a firm and a member thereof, real estate is assets of the firm, though the legal title was allowed to stand in the name of such member; the consideration therefor having moved from the firm, the debts assumed as part of the consideration having been entered in its books as its liability and treated as such, the taxes thereon. having been assessed in its name and paid by it, and it having been included in the firm assets in the statement of assets of the firm and the partner in whose name it stood, made and signed by such member, on the strength of which firm indebtedness was contracted.

In Bankruptcy.

Dalzell, Scott & Gordon, for firm creditors.

George W. Guthrie, for individual creditors.

BUFFINGTON, District Judge. The certificate in this case involves the question whether the proceeds of certain real estate, known respectively as the Allegheny and La Belle Tanneries, sold under proceedings in bankruptcy, shall be awarded the creditors of Adolph Groetzinger, or those of the firm of A. Groetzinger & Sons. The referee found as a fact that both properties belonged to that firm, and awarded the funds to firm creditors. Considering first the Allegheny Tannery, we find the ownership was vested May 12, 1890, in Adolph Groetzinger, who thenceforward used it as a tannery. In 1891 he associated with him in his tanning business two of his sons, the three forming the firm of A. Groetzinger & Sons. A third son was admitted to the firm three or four years later. From the time the firm was formed until its adjudication in bankruptcy, this property was used by this firm in tanning leather, and constituted for many years its sole, and always its principal, place of business. Whether it became firm property is a question to be considered in two aspects: First, as between the partners themselves; and, secondly, as against creditors. Whether, as between partners, it became firm property, is a question of intent. "Where the owner of a business takes in partners," says Bates, Partn. 263, "it becomes a question of intention whether the stock becomes partnership property or not; and an intention that it shall may be implied, in the absence of express agreement, from the nature of the property, conduct; and circumstances." "Whether. it is partnership or individual

property is purely a question of intention of the partners, to be inferred from their actions and surrounding circumstances." Article "Partnership," 17 Am. & Eng. Enc. Law, p. 945. "The manner in which the property is treated on the books of the firm is usually cogent evidence as to its partnership character." Id. p. 947. As between partners, the question is also held one of intent by the courts of this state. Warriner v. Mitchell, 128 Pa. 160, 18 Atl. 337; Shafer's Appeal, 106 Pa. 54. This tannery is listed in the assets of the firm in the statement made and signed by Adolph Groetzinger, the holder of the legal title. This, in connection with the other facts of the case, was evidence of an agreement on his part to bring such realty into the stock of the firm. The writing was sufficient to avoid the statute of frauds (Ross v. Baker, 72 Pa. 188); and a trust was imposed on the holder of the legal title, such as a chancellor could and would enforce, as between the parties (Calkitt v. Thomas, 1 Phila. 463). In addition to the written admission of the holder of the legal title that the tannery was the property of the firm, we find it was exclusively occupied by such firm for a number of years without compensation or accounting. It was assessed as firm property, and the taxes paid by the firm. During all these years it was carried on the books of the firm as an asset to the extent of $133,000. It was so represented by Adolph Groetzinger, and, indeed, credit was obtained for some of the firm indebtedness here sought to be enforced against it upon the personal representation of Adolph Groetzinger, evidenced by his written statement, that it was firm property. In addition thereto, the tannery was burned, and subsequently replaced by the firm at an outlay of $30,000. In view of these facts, we are of opinion the referee was warranted in his finding that, as between the partners, the Allegheny Tannery was firm property. Such being the case, is there any preventing reason why this firm property should not be applied to the payment of firm debts, in accordance with well-established general principles and the express provisions of the bankrupt act (section 5, cl. "f")? The individual creditors of Adolph Groetzinger resist such application. It will be observed they have no lien against the land, and they claim no right to it, other than the fact that the legal title was suffered to remain in Adolph. Their contention is that under the decisions of the supreme court of Pennsylvania, which they say are conclusive upon us as a rule of property, the title of this land of record stamps it as individual property, without reference to the equitable ownership thereof. A careful study of all the Pennsylvania cases shows that no decision of that state goes to the length of holding that, where the recorded title of real estate owned by a firm is allowed to stand in the name of an individual member of the firm, it will be applied to the payment of unsecured individual creditors of such partner. It is true, statements broad enough to cover the case of such unsecured individual creditors may be found in those decisions, but, when they are followed to their source, there has been no such adjudicated case; and even these statements finally come to McDermot v. Laurence, 7 Serg. & R. 438, and Hale v. Henrie, 2 Watts, 146. In these cases the title vested in the individual partners as tenants in common, and it was held that,

having so taken, the partners had irrevocably fixed the title as held individually. In Calkitt v. Thomas, 1 Phila. 463, the late Chief Justice Sharswood, then presiding in the district court, said:

"It must be admitted that the supreme court include creditors in their language which they have used. 'But there has been no case as yet in which it was necessary to decide that question.' Ridgway, Budd & Co.'s Appeal, 3 Harris, 177, comes nearest to it; yet, if it be looked at closely, it will perhaps be found only to decide that it is not competent to show by parol that real estate conveyed to two persons as tenants in common was partnership property."

In re Zug, 16 N. B. R. 280, Fed. Cas. No. 18,222, is cited as decisive and controlling on the question before us. The facts of that case were, however, different. There the recorded title was to the individual partners as tenants in common, and in accordance with McDermot v. Laurence, supra, and the cases following it, it was held that, the title having been taken by the individual partners as tenants in common, the realty was fixed as individual property, and was applicable to individual debts. The court said:

"They thereby became tenants in common of the property, in relative proportions corresponding to their original equities, viz. partners. The trust, if there was any, ceased to exist, and no subsequent use of the property could change the character thus impressed on the title. Neither of the partners, under these circumstances, would have any equity against the other to insist upon the application of the property in the first instance to the payment of firm debts, and so the joint creditors could have none."

Now, inasmuch as the claim of a firm creditor to apply firm property to firm debts rests solely on the right of the partners to such application, it is evident the Zug Case, where the partner's right to such application was gone, is not this case, where the Allegheny Tannery has never been conveyed to the partners as tenants in common, and where the right of the other members of the firm to demand a conveyance by Adolph of the tannery existed, and could have been enforced.

The legal title to the La Belle Tannery was vested in Adolph Groetzinger by deed of Charles Groetzinger dated June 10, 1897, and so remained at the date of the adjudication. The consideration of the conveyance, as testified by Glasser, the manager of the firm of A. Groetzinger & Co., was the cancellation by that firm of a debt owing to it by the firm of J. Groetzinger & Sons of $52,294.44, and its assumption of the remaining indebtedness of said firm to the extent of $183,403.73. About $70,000 of said indebtedness was subsequently paid by the firm of A. Groetzinger & Sons. Just why the deed was made to Adolph personally does not appear. In point of fact, the debt of J. Groetzinger & Co. to A. Groetzinger & Co. of $52,294.44 was canceled in consideration of the conveyance, and the remainder of the former firm's indebtedness was assumed by the latter. It is true, the statement in the La Belle Tannery ledger, as well as in the deed of conveyance, was that A. Groetzinger was to assume the indebtedness; but there is not only no evidence that he did so assume, but, on the contrary, the fact is shown, as we have seen, that the fifty-two odd thousand owing to Groetzinger & Sons was not assumed or paid by A. Groetzinger, and that that firm as-

sumed the rest of the indebtedness of J. Groetzinger & Co., and paid about $70,000 of it. The testimony of Glasser was that the deed was to have been made to the firm, but that Adolph Groetzinger subsequently directed it be made to him. There is no evidence that this was assented to by the other partners. The consideration for the transfer passed from the firm, and not from Adolph Groetzinger. There can be no doubt that, as between the partners, it was regarded, held, and used as firm assets to the extent of $153,151.39. The outstanding purchase-money mortgage upon it was entered in the books and treated as a firm liability. The property was assessed in the name of, and the taxes paid upon it by, the firm. Moreover, in the statement of the assets of the firm and of himself individually, made under the directions of Adolph Groetzinger, and signed by himself, and on the express strength of which some of the firm indebtedness here sought to be enforced was contracted, this tannery is included among the firm assets, and not among his own. These facts are not denied by Adolph Groetzinger, nor is there any proof that he ever claimed or asserted individual ownership of the property. In view of these facts, we think the referee was abundantly justified in finding as he did that, as between the partners, the La Belle Tannery was firm property. Having been thus paid for by the firm, it should be applied to the payment of firm debts (Lacy v. Hall, 37 Pa. 360; Erwin's Appeal, 39 Pa. 535; Shafer's Appeal, 106 Pa. 49; Mining Ass'n v. Reed, 80 Pa. 38; Warriner v. Mitchell, 128 Pa. 153, 18 Atl. 337), unless the mere fact that the legal title was allowed to remain in Adolph Groetzinger prevents. As noted above, in considering the Allegheny Tannery land, we find no adjudicated Pennsylvania case which goes to that extent in the case of general, unsecured creditors. To this case we may apply the language used in Erwin's Appeal, supra:

"There was nothing, then, either in the views with which the lot was bought, or in its subsequent use, to take the purchase out of the rule that the beneficial interest in land follows the ownership of the money which was paid for it. Had the title been taken to both Imhoff and Myers, without any assertion on its face that it was treated by them as partnership property, under the ruling in Hale v. Henrie, 2 Watts, 143, and several subsequent cases, they would have been but tenants in common. The absence of such an assertion would have been evidential that the partners did not intend to bring the property into partnership stock, but that they intended to take separate interests. But the legal title was conveyed to Jacob Myers alone. We are now looking for the use. With the intention to buy for the firm, with nothing to indicate a severance of interests, and with the fact that the joint funds paid for the lot, it must be that the beneficial interest was in the firm as such."

We accordingly hold with the referee that the funds of the Allegheny and the La Belle Tanneries should be applied to the firm indebtedness of A. Groetzinger & Sons, and not to the individual indebtedness of Adolph Groetzinger.