# Abbott's Appeal.

*Real estate, when partnership property.*

Land bought for partnership purposes and paid for out of partnership funds, is partnership property, though conveyed in the deed to the partners as tenants in common.

APPEAL from the Common Pleas of *Lancaster county*

This was an appeal by Charles H. Abbott, for himself and as executor of the last will and testament of George Abbott, deceased, from the decree of the court below distributing a portion of the

fund in court arising from the sheriff's sale of the real estate of David Reeves, Charles H. Abbott, and George Abbott, to the surviving partners of the firm of Reeves, Abbott & Co.

The facts of the case were as follows :—

Prior to and on the 11th of March 1854, David Reeves, Samuel J. Reeves, Charles H. Abbott, and George Abbott, under the name and firm of Reeves, Abbott & Co., carried on the manufacture of iron at the furnace and rolling-mill known as the Safe Harbour Iron Works, at Safe Harbour, Lancaster county, which said iron-works were owned by the individuals composing said firm.

. On that day, Martin Good, of Conestoga township, said county, sold and conveyed in fee a tract of land containing one hundred and eleven acres and eighty perches to David Reeves, Samuel J. Reeves, Charles H. Abbott, and George Abbott, as tenants in common, for the sum of $8931.07, and subject to a dower of $2218.92. In the deed conveying said land, no mention is made of the existence of such a firm as Reeves, Abbott & Co.

At the time of the conveyance a mortgage was given to Martin Good for the unpaid purchase-money, amounting to $6431.07, by David Reeves, Samuel J. Reeves, Charles H. Abbott, and George Abbott. The deeds of conveyance and mortgage were recorded in Lancaster county.

In January 1860 the firm was dissolved by the death of George Abbott, but the business was continued under the name of the old firm until the following April, when David Reeves and Samuel J. Reeves commenced business under the name and firm of David Reeves & Co., at the same place, making use of the material and effects of the old firm, and have continued the same to the present time, without any settlement of the affairs of the old firm as between partners. By the will of George Abbott, deceased, Charles H. Abbott, the appellant, was appointed his executor.

Martin Good on the 29th of November 1862, on *scire facias*, obtained judgment for $3982.96, and on December 11th 1862 a *levari facias* to January Term 1863, No. 33, Ex. Doc., was issued, upon which the said land was sold by the sheriff, producing the sum of $8903.77. Of this sum $4014.16 was paid to Martin Good, mortgage-creditor, and $210.79 accrued interest on said dower, leaving a balance of $4678.82, which has been ruled into court and is the fund at present for distribution.

The auditor appointed by the Court of Common Pleas of Lancaster county to distribute the same, after deducting expenses and all liens, found a balance of $2400.90. Of this sum Charles H. Abbott, appellant, claimed one-fourth for himself in his own right, and one-fourth as executor of George Abbott, deceased.

The auditor awarded the balance, viz. $2400.90, " to the sur-

viving partners of the firm of Reeves, Abbott & Co., who are settling the business of the firm."

To this distribution exceptions were filed, but the court below overruled them and confirmed the report; which was the error assigned here.

*Emlen Franklin* and *R. W. Shenk*, for appellant, contended that although the decisions of other states with regard to the doctrine of the equitable conversion of real estate paid for by partnership funds, and used for partnership purposes, into personalty, were conflicting, in Pennsylvania the decisions have been uniform, to the effect that when a conveyance is taken by the individuals composing a firm as tenants in common, they must be so considered: Lancaster Bank *v.* Myley, 1 Harris 544, Hale *v.* Henry, 2 Watts 143, Ridgway, Budd & Co.'s Appeal, 3 Harris 181, Code *v.* Huling, 3 Casey 84, and Erwin's Appeal, 3 Wright 535. This principle was taken by the auditor and the court below as only applicable to the case where the interest of third parties, purchaser or creditors, intervened. The Supreme Court have viewed it, however, as a question of intention, and declared that taking a conveyance as tenants in common is evidence that the partners did not intend to bring the property into partnership stock, but that they intended and did take separate interests: Erwin's Appeal, 3 Wright 535. In this case the parties took a deed, in the *habendum* of which the conveyance was to them as tenants in common. They never afterwards manifested any purpose of converting it into partnership property by any deed or writing, and they therefore stand toward each other as they would to third parties under our decisions as tenants in common, and each be entitled to one-fourth of the proceeds of the sale of the land.

Besides this, the decisions of other states, upon which the auditor and the court below rely, require a necessity to be shown why such property, held as it is in this case, should be converted into or considered as partnership property. No such necessity is shown here. The old firm has no debts except a secured mortgage. Appellees have not shown that they are creditors of the firm, except by their own allegation, and if they had any equities to work out through the partnership property, why did they not do so long ago? Their delay in so doing argues doubts whether such equities, if any existed, would be advantageous to them. If appellant is their debtor, it would have been profitable to them to have had a settlement long ago. At the dissolution of the firm, the appellees formed a partnership, continuing the business, taking possession of all property of the old firm, including material, which for five years they have worked, during the most prosperous time iron manufacturers have ever known. During this time there has

been no settlement of the affairs of the old firm, nor is there any evidence that appellees made any attempt.

As there are no debts except the aforesaid mortgage, the property in question was purchased out of the profits of the firm. The purchase-money of this real estate may be considered as divided profits, and if appellees can follow and claim them in this case as partnership property, they can follow and claim any other profits for the same which appellant may have received. The principle contained in the decisions of this court upon this subject, regards as divided profits, investments made by a firm in real estate to themselves, as tenants in common.

*O. J. Dickey* and *George F. Breneman*, for appellees, argued that the prevailing and just rule concerning real estate belonging to a partnership is, as shown by numerous cases, that land bought with the assets and for the purposes of a partnership, will be partnership property, although the deed may be taken in the names of the partners as tenants in common: See American note to Lake *v.* Craddock, 1 White & Tudor's Lead. Cas. in Eq. 240 to 245, 3d Am. ed., and the cases there cited. See also Parsons on Contracts, book 1, ch. 12, § 2, 5th ed.; Dyer *v.* Clark, 5 Metf. 562; Buchan *v.* Sumner, 2 Barb. Ch. R. 165; Tillinghast *v.* Champlin, 4 R. I. 173; Cilley *v.* Huse, 40 N. H. 358; Hill *v.* Beach, 1 Beasley (N. J.) 31; Davis *v.* Christian, 1 Gratt. 11.

The auditor's report shows that the land, the proceeds of which are now in dispute, was purchased by the firm of Reeves, Abbott & Co. for the purposes of the partnership business; that it was so held and used, and that all the payments were made out of the partnership funds. The partners, as individuals, never had anything to do with it, the purchase having been made by the manager or agent of the firm, and the payments having all been made by their book-keeper. In some cases the courts regard the question, whether or not real estate is partnership property, as mainly one of intention: Hoxie *v.* Carr, 1 Sumner 181. The object of the purchase, the subsequent use of the property, and the manner of payment, show very clearly that it was a partnership transaction.

The appellant relies on the conveyance to the partners in this case as tenants in common, as evidence that they intended to take separate interests; but in Hoxie *v.* Carr, 1 Sumn. 190, it is said that " the circumstance that the deeds of conveyance are to the partners as tenants in common, though certainly of some weight, is not sufficient to overturn the strong presumption the other way."

In Erwin's Appeal, 3 Wright 535, the legal title was in Myers, one of the partners, but it being shown that the land had been purchased with partnership funds for partnership purposes, even though not used strictly in the partnership business, this court held it to be partnership property. See also Moderwell *v.* Mullison, 9 Harris 257.

The cases cited by the appellant, as requiring written or recorded evidence of the intention of the partners to treat the land as partnership stock, have reference only to third parties, creditors or purchasers without notice.

The partnership affairs are not yet fully settled. The firm of Reeves, Abbott & Co. is still largely indebted, and it is uncertain whether the property at Safe Harbour is worth the amount of the mortgage yet on it or not. Until all the debts of the firm are fully satisfied, no partner can claim any portion of the property. The proceeds of sale of any property of the firm, whether real or personal, must be first applied to the payment of debts, and should be paid to the surviving partner.

The opinion of the court was delivered, June 29th 1865, by

READ, J.—" Land," says Chief Justice Tilghman, in McDermot *v.* Lawrence, 7 S. & R. 441, " except for the purpose of erecting necessary buildings, is not naturally an object of trade or commerce. Yet there is no doubt that, by the agreement of the partners, it may be brought into the stock, and considered as personal property, so far as concerns themselves and their heirs and personal representatives. It was so decreed by Lord Eldon, in Ripley *v.* Waterworth, 7 Ves. Jr. 424. But if a conveyance of land is taken to partners as tenants in common, without mention of any agreement to consider it as stock, and afterwards a stranger purchases from one of the partners, it would be unjust if without notice, he should be affected by any private agreement."

It was considered material in this case that the conveyance to the partners was as tenants in common, and that no purchase-money could have been paid out of the partnership funds. So, in Kramer *v.* Arthurs, 7 Barr 165, Chief Justice Gibson held that a joint stock company to deal in land is essentially a partnership, and land purchased by it as an article of trade is not subject to judgment and execution at the suit of a separate creditor. So in Overholt's Appeal, 2 Jones 222, Judge Rogers held that where land has been purchased for partnership purposes and was so held, judgments for partnership debts are payable out of the proceeds in preference to judgments against partners individually.

In Erwin's Appeal, 3 Wright 535, Judge Strong says, " It (the lot) was purchased and paid for with the money of the firm, and it was used by the firm until the time of the sheriff's sale," and the court in that case decided the proceeds of the sale of it should be applied to the payment of judgments against the firm for partnership debts in preference to judgments against the partners individually. It is true he says, p. 537, " Had the title been taken to both Imhoff and Myers, without any assertion on its face that it was treated by them as partnership property, under the ruling in Hale *v.* Henrie, 2 Watts 143, and several subsequent cases,

they would have been but tenants in common. The absence of such an assertion would have been evidential that the partners did not intend to bring the property into partnership stock, but that they intended to take separate interests. But the legal title was conveyed to Jacob Myers alone. We are now looking for the use." But the cases of Hale v. Henrie, Ridgway, Budd & Co.'s Appeal, 3 Harris 181, and the language of Coulter, J., in Lancaster Bank v. Myley, 1 Harris 549, all relate to purchasers and creditors, and not to the partners themselves, considered simply as members of the firm. Our recording act affects purchasers and creditors, but does not, independent of them, disturb the actual relations of the partners to each other in respect to partnership property, whether real or personal.

In The North Pennsylvania Coal Company's Appeal, 9 Wright 181, we held that a purchase by one partner in his own name, and secured by his own bond and mortgage, did not bind the firm, or make it a firm-debt, although it appeared by the firm books to have been bought on firm account. A declaration of trust was afterwards executed by the purchaser, but not recorded, declaring that the money paid was partnership funds, and that the land was held by him in trust as partnership property, which land was afterwards sold, and the partnership creditors were held alone entitled to share in the proceeds.

In the present case, the deed was made to the four partners in their individual names, and the bond and mortgage were executed in the same way. The contract for the purchase was made by Mr. Griffin, at that time the manager of Reeves, Abbott & Co., who, as partners, were engaged in the manufacture of iron at Safe Harbour, in Lancaster county, and the purchase-money paid previously to the sale by the sheriff was paid out of the funds of the firm and by its agents. The receipts on the bond corroborate this statement of the auditor, who finds the object of Messrs. Reeves & Abbott, in making this purchase, to have been to obtain for the use of their furnace iron-ore, which it was supposed would be found in this property; iron-ore was found there, and was raised for the use of the furnace.

The business of the firm, dissolved by the death of George Abbott, has never been finally settled, and it is alleged by the appellees that the firm is still largely indebted.

Under these circumstances, we think, therefore, with the auditor and the court below, that this land was partnership property, and that the proceeds of it, or rather the balance remaining in court, should be paid to the remaining partners of Reeves, Abbott & Co. The law has been well and correctly stated by the auditor.

Decree affirmed.

Strong, J., dissented.