178  310
180  428

Margaret Hayes, Sarah Forrest, Lola B. Hayes, Margaret F. Hayes, N. Katharine Hayes and Bessie C. Hayes *v.* Milo C. Treat et al., Trustees of the Baptist Church of Washington, Pa., Appellants.

*Partnership—Partnership real estate—Deed.*

Where the question is not raised by creditors of either the firm or the individual members of it, but by the heirs at law of one of the partners against the executors of their ancestor, the general rule of law applies that if real estate is bought with partnership funds and for partnership purposes it is partnership property, notwithstanding the deed may be made to the individuals of whom the firm is composed.

In an action of ejectment by the heirs of a partner against the vendee of the representatives of the partnership, to recover an interest in real estate, where it appears that the deed was made to the partners in their individual names, the presumption that they held as tenants in common is rebutted by proof that the land had been bought for the use of the firm, paid for with partnership moneys, and that the partners during their lives had treated it as partnership property.

*Ejectment—Partnership property—Evidence—Proof of notice.*

In an action of ejectment against a church to recover an interest in real estate, where it appears that the plaintiffs claimed as the heirs of a partner, and the church was a vendee of the representatives of the partnership, proof of a conversation between one of the plaintiffs and a woman who was not a member of the church, but whose husband was, although he was not one of the trustees, is wholly incompetent for the purpose of showing that the church had notice of plaintiffs' claim prior to its purchase of the land.

*Ejectment—Evidence—Partnership.*

In an action of ejectment, deeds for properties having no relation to the property in controversy, but purchased at various times, some individually, and some by both members as tenants in common, some by the firm, and some by one of its members, for the purpose of showing that the parties held other properties in these various ways, are inadmissible in evidence.

In an action of ejectment by the heirs of a partner against the vendee of the representatives of the partnership to recover an interest in real estate, testimony of the plaintiffs to show that they had not assented directly or indirectly to the sale of the property to the defendant is immaterial, if the property was in fact partnership property.

*Ejectment—Partnership—Evidence—Presumption—Reformation of deed.*

In an action of ejectment by the heirs of a partner against the vendee of the representatives of the partnership, where the testimony to the effect that the property was partnership property is sufficient to rebut the pre

sumption that the property was held by the partners as tenants in common, arising from the fact that the deed was made to them individually, it is improper for the court to affirm without qualification or explanation points which embody the general rules of law applicable in cases where a written instrument is different from the agreement actually made by the parties, and its reformation is sought.

Argued Oct. 19, 1896. Appeal, No. 52, Oct. T., 1896, by defendants, from judgment of C. P. Washington Co., May T., 1895, No. 45, on verdict for plaintiffs. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment for a lot of land in the borough of Washington. Before TAYLOR, J.

At the trial, the common source of title by agreement being Mrs. Martha B. Montgomery, an heir or devisee of the estate of George Black, deceased, the plaintiffs rested on proof of a deed from A. J. Montgomery and Martha B., his wife, dated April 29, 1874, conveying the property described in the writ to " S. B. Hayes and Charles Hays " in fee, the will of Charles Hayes, admitted to probate December 8, 1886, and proof of possession by the defendants.

The defendants claimed title as purchasers of the lot in dispute from the copartnership or firm of S. B. & C. Hayes, composed of Sheldon B. Hayes and said Charles Hayes, partners in the manufacture of carriages, etc., for many years prior to April 29, 1874, and until as late as May 11, 1891; and in their case in chief evidence was offered and admitted as follows :

(*a*) That the firm of S. B. & C. Hayes, by written articles of agreement dated and duly acknowledged July 9, 1873, purchased the lot in dispute from Mrs. Martha B. Montgomery, for $3,100, of which $1,100 was to be paid or secured to Mrs. Montgomery, and $2,000 was to be paid to Edward Sexton, who owned and occupied the buildings on the lot for a livery stable.

(*b*) That the property was so purchased by S. B. & C. Hayes, as expressed at the time, for the purposes of the firm's business, and that all the purchase money was paid out of the firm's moneys, as follows : $2,000 to Edward Sexton on April 1, 1874, as provided in the articles, and to Martha B. Montgomery

$559.45 on July 14, 1874, and $573.38, including interest, on December 15, 1874.

(*c*) That, after obtaining possession of the property in dispute, on or about April 1, 1874, the firm of S. B. & C. Hayes used the property in their firm business, without interruption, until about May 11, 1891, at first with a "repository" for carriages, etc., on part of it, and a livery stable conducted by the firm upon another part of it, subsequently renting the whole in the name of the firm as landlords, until the date last mentioned, when by articles of agreement the representatives of the partners, both then deceased, agreed to sell and convey, and the defendants herein, in trust for the Baptist Church of Washington, Pa., agreed to purchase, the property for $6,300.

(*d*) That of said purchase money, the sum of $4,300 was paid in cash on the date of the articles to the manager of the partnership estate of S. B. & C. Hayes, and on May 16, 1891, the said manager applied $4,000 of said moneys to discharge the balance of an indebtedness of S. B. & C. Hayes to John H. Little ; an indebtedness that was originally $7,000, borrowed of the Washington Savings Bank in 1878, when both partners were living, upon three judgment notes executed by the firm of S. B. & C. Hayes and signed by Charles Hayes, the plaintiffs' testator, and subsequently transferred by the bank to said John H. Little.

(*e*) That at once upon the purchase of the property, the Baptist Church took possession, and removing the old buildings proceeded to erect thereon a large brick church building, and had nearly completed the same at a cost of about $12,000, when, endeavoring to obtain a conveyance, they for the first time learned of an alleged defect in the record title.

Defendants then rested and the court admitted on the part of the plaintiffs, after the defendants had rested, under objection and exception the testimony of Margaret Hayes, one of the plaintiffs, that before the sale of the property in controversy to the Baptist Church she had a conversation with Mrs. Henry Hull, the wife of a member of the Baptist Church, but who was not a member herself, in which the witness said that she was opposed to the sale of this property, and that she never would consent to it. This was offered for the purpose of showing

notice of plaintiffs' claim of title to the trustees of the Baptist church. [1]

The court, in ten separate offers, admitted under objection and exception ten separate deeds, of different dates, for different properties, in no way connected with the property in dispute. Some of these deeds were to Sheldon B. Hayes alone, some to Sheldon B. Hayes and Charles Hayes as tenants in common and some to Sheldon B. Hayes and Charles Hayes, doing business under the firm name of S. B. & C. Hayes. The purpose of these offers was to show that Sheldon B. Hayes and Charles Hayes held some real estate individually, some as tenants in common and some as firm property. [2, 3, 4, 5, 6, 7, 8, 9, 10, 11]

The court admitted under objection and exception the testimony of these several plaintiffs that they had never assented directly or indirectly to the sale of the property in controversy. [12, 13, 14]

The court charged in part as follows:

This is an action of ejectment brought February 28, 1895, by Margaret Hayes, Katherine, Lola B., Margaret F., Bessie, Charles H. Hayes and Sarah Forrest, widow and heirs at law of Charles Hayes, deceased, against Milo C. Treat, William L. McCleary and Isaac J. Dickson, trustees of the Baptist Church of Washington, Pa., to recover an undivided moiety of a lot of ground situated on the south side of East Wheeling street in the borough of Washington, fronting on said street sixty-four feet and extending back along an alley eighty-five feet, on which the defendants have erected a church edifice, and of which property they are shown to be in possession at this time. The plea entered by the defendants is the usual plea of not guilty. [There is no dispute over the title to the other moiety or half of this lot of ground being in the defendants, it having been acquired at the same time and by the same instrument of writing under which the defendants claim they have title to the moiety claimed by the plaintiffs in this equitable proceeding. The plaintiffs in this action claim an undivided moiety of this lot of ground as devised under the will of Charles Hayes, deceased, the husband and the father of the plaintiffs. That will was read in your hearing. The common source of title was admitted to be a deed of conveyance, also read in your hearing,

from A. J. Montgomery and Martha, his wife, to S. B. Hayes and Charles Hayes, dated April 29, 1874. That the legal title, or paper title, to this moiety sued for in this action is in the plaintiffs there is no dispute. But this prima facie title of the plaintiffs the defendants contend is not sufficient to dispossess them of the equitable title in them by reason of the beneficial use and trust to which this property was put and held by S. B. and Charles Hayes in the partnership of S. B. & C. Hayes, from which they claim title.] [15] [If the jury find from the evidence that it was so held and used by them as partnership property, notwithstanding the conveyance of Montgomery and wife was to them as tenants in common, the equitable title set up by the defendants will prevail over the legal title; but on the other hand should you find from the evidence that this lot of ground formed no part of the partnership property of S. B. & C. Hayes, from the date of the conveyance to them until the purchase of the property by the defendants, then the title to the undivided moiety contended for here by the plaintiffs is in the plaintiffs and good in them against all comers since parted with by Montgomery and wife, if found by you to be the individual property of Charles Hayes.] [16] It is not denied here that there was a partnership formed between S. B. Hayes and Charles Hayes many years ago, back in the '40s, as was testified to, for the manufacture and sale of buggies and carriages, of vehicles, and the sale of lumber; that it continued to be a partnership composed only of the original copartners, Charles Hayes and S. B. Hayes, except from 1867 to 1871, during which time two other gentlemen came in and went out of the firm; the original partners continued as such until the time of their death, and the business then being continued by their survivors, and to this day remaining unsettled between their respective representatives, as it was shown that there was a proceeding in equity for the purpose of determining it in this court. You will be relieved, therefore, in this case from determining often a very perplexing question of mixed law and fact, whether or not a partnership existed between the parties, and your duties are therefore simplified to this question for your determination. Was the property in dispute partnership property under the facts and the law applicable thereto?

Much of the time occupied in trying this case was on offers,

objections to offers, and arguments on the admissibility of testimony, but the facts in the case, the relevant facts, are not many nor difficult of application. [The plaintiffs made out their prima facie case by introducing in evidence the deed from Montgomery and wife and the will of Charles Hayes, and proving possession by the defendants of this property. That made out for them, gentlemen of the jury, a complete legal title.] [17] [The defendants claim they are entitled to a verdict at your hands because they have shown that when one J. M. House had started an opposition factory across the street from the property in dispute, which was a livery stable then, S. B. & C. Hayes, in order to get nearer to that opposition business and be better able to compete with it, purchased this property with partnership funds, put in a livery stock, and built as an addition thereto, first, a two-story brick repository, put in a stock of buggies and carriages, leased ground adjacent thereto, erected a frame structure in which they kept their omnibuses and horses for the omnibus business in this branch of the business,—all with partnership funds; that they employed from time to time managers for this business, and that the accounts and expenses of this business were kept in the books of the firm at the factory on Franklin street, and the proceeds of the business there turned into the general partnership account; and other facts and circumstances from which the defendants claim, in connection with those enumerated, that this property was held for the beneficial ownership and uses of the firm of S. B. & C. Hayes, and not by them as individuals or tenants in common as the deed of conveyance imports on its face.] [18]

S. B. Hayes, of this firm, died in 1879, and his interest in the partnership passed by his will to his son Marshall, and the business was continued in connection with the surviving partner, Charles Hayes. Charles Hayes died in 1886, and the business was continued by Marshall Hayes, who died in 1891, when Sheldon B. Hayes, son of Marshall Hayes, continued to run the business for a short time, when efforts were made by the executors of Charles Hayes to wind up the business. By the will of Charles Hayes his executors were empowered to sell the real estate of the firm for the payment of the debts of the firm. From time to time the property in dispute here, the rents and issues from it, were also turned into the partnership account. A consider-

able sum was owing to John H. Little, who held the firm's paper for some years, and this property in dispute was offered for sale and finally sold for $6,300, by articles of agreement entered into by Sheldon Hayes and George Hayes, representing the interest of Marshall Hayes, which was at one time that of S. B. Hayes, and the executors of Charles Hayes, to assist in winding up the firm business, on the one part, and the defendants in this suit on the other part, who paid $4,300 of the purchase money, which was applied in payment of the firm's old indebtedness to Little, entered into possession of the property under these articles of agreement read to you, dated May 11, 1891, removed the stable and repository and erected thereon the church building now to be seen on this lot of ground. Under this article of agreement the defendants here, having both the title of S. B. and C. Hayes in this property, are entitled to a deed when the consideration money is paid in full.

The plaintiffs testify that they never gave any authority to any one to sell the interest they claim in this property, or consented to the sale of it. If you find it was partnership property, no authority or consent from them was necessary, as authority to sell was vested in Charles Hayes' executors in connection with the managers of the then existing firm by reason of its still being unsettled or wound up. If it is found by you to be the separate property of Charles Hayes, then it could not be sold without their consent or authority,—that is, the plaintiffs in this case,—and the only manner in which they could be defeated in this action would be by the doctrine of estoppel, which has been set up here but not seriously urged; and even that would not affect Charles Hayes, one of the plaintiffs here,—the doctrine of estoppel if it were applied here would not affect Charles Hayes, the young man, because it was proved that at that time he was not of age.

[An estoppel is where one claiming a title to property stands by, as it is said, and permits an innocent purchaser for value to enter upon the property claimed and make improvements, without asserting title. It is, in law, an act or admission that afterwards cannot legally be denied; and if you should be satisfied from the evidence that the plaintiffs in this case knew of the sale and interposed no objections thereto, and suffered the defendants to go on with their improvement without asserting

their title as they now set it up, they are in law estopped from asserting it in this action. And the same principle would apply, gentlemen of the jury, to the defendants. It is alleged that they had notice before they bought or tore down the old structure or commenced the erection of the new;—if they had information that the title was defective or that the Hayeses here claimed to have an interest in this property, then it would have been their business to have investigated. Both upon the question of acquiescing by the plaintiffs in what was done by way of improving this property, and also of notice on the part of the defendants as to the existing title.claimed by the plaintiffs, you will take all the evidence into account concerning that, and determine whether or not upon either of those branches of the case one side or the other are entitled to any serious consideration in this investigation. You will recall all the testimony touching upon that branch of the case and give it the weight you think it entitled to receive, as it is your duty to consider all the evidence in the case, as from it you are to determine the rights of these parties.] [19]

[Now, as to the law, gentlemen of the jury. This is an equitable proceeding as distinguished from one where the parties stand purely on their legal rights; and the general rule of equity as applied in courts of equity is, that real estate purchased for and appropriated to, or intended to be used for partnership purposes, and paid for out of partnership funds, is partnership property, although the legal title, such as that under which the plaintiffs in this action claim and have shown, is taken in the individual names of the partners, or in the name of one of the partners, or in the name of a third person even, equity will hold the party holding the legal title, or his heirs in case of his death, as trustees for the firm: 1 Lindley on Part. Am. ed. p. 334, n.; Abbott's App., 50 Pa. 234; Lacy v. Hall, 37 Pa. 360; Erwin's App., 39 Pa. 535; and many other Pennsylvania cases, as well as those of other states, we might cite. In these cases it is distinctly laid down that land bought for partnership purposes and paid for out of partnership funds is partnership property, though conveyed by deed to the partners as tenants in common, to use the language of Abbott's Appeal. Real property, purchased with partnership funds and held for the purposes of the firm, is held by courts of equity as consti-

tuting a part of the stock of the partnership ; it leaves the legal title undisturbed except so far as may be necessary to protect the equitable rights of the respective parties. Such real estate is regarded in equity as personal property so far as may be necessary for the payment of debts and the adjustment of accounts between the partners. In equity this property in dispute, if found by the jury that it was purchased with partnership funds and devoted to partnership uses, would be regarded as held in trust as partnership property, and therefore subject to the rules applicable to partnership personal property, and liable to the claims of the partners, or their survivors, upon each other, and the debts of the partnership. Real property so purchased which remains after paying the debts of the firm and the just and equitable claims of the different members of the firm, as between themselves, is considered and treated as real estate.

We deem it unnecessary to say anything further to you upon the law of the case.] [20] [The degree of proof necessary to establish that this was partnership property must be clear, explicit and unequivocal from all the evidence in the case, or to use the language of a more recent decision, clear, precise and indubitable.] [21] [Your verdict, if you should find for the plaintiffs, would be for the plaintiffs for the land in dispute, which is described in the præcipe for the writ to be an undivided one half of this lot of ground.] [22] If you find for the defendants you simply return a verdict for the defendants. Should you find that this was not partnership property but the individual property of Charles Hayes, and find that the plaintiffs are estopped in any way under the law of estoppel as previously stated, you will still find for the defendants except as to the interest of Charles Hayes, one of the plaintiffs here, for his undivided interest, which would be one seventh of one half, or one fourteenth of the whole. But if you find from evidence in the case, and the law that you must apply thereto as a fact, that it was partnership property, then the title set up here by the defendants is good as against the legal title not denied to be in the plaintiffs.

Plaintiffs' point and answer thereto among others were as follows :

10. The proof necessary to convert real estate conveyed to

the partners as tenants in common into partnership assets must be clear, explicit and unequivocal, and in the absence of such proof the verdict of the jury must be for the plaintiffs. *Answer:* Affirmed. [23]

Defendants' point and answer thereto among others were as follows:

2. If the jury find from the evidence that the land in dispute was purchased by the firm of S. B. & C. Hayes for use in their partnership business, and was paid for with partnership funds, and was devoted by them to use in the partnership business, the firm of S. B. & C. Hayes became the beneficial owners of the said land, and their title must prevail in this suit against the legal title of Charles Hayes as a tenant in common with S. B. Hayes, and the verdict should be for the defendants. *Answer:* That is affirmed, if you find that to be the case. [24]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* among others were (1–14) various rulings on evidence (15–24) above instructions, quoting them; (25) the charge was misleading and confusing.

*David Sterrett*, and *Boyd Crumrine*, with them *J. M. Braden* and *E. E. Crumrine*, for appellants.—The equitable title under the articles of July 9, 1873, as sustained by the evidence, was the main branch of the defendants' case. The articles transferred the estate in equity, and the vendor, Mrs. Martha Montgomery, became a trustee for the purchasers : 2 Add. on Cont., 872; Seton v. Slade, 7 Ves. 274; Taylor v. Abbott, 41 Pa. 352.

When the purchase money has been paid in full under the articles of purchase, the legal estate becomes a dry trust, and the holder of the equitable title can compel a conveyance : Kay v. Scates, 37 Pa. 31; Ogden's App., 70 Pa. 501; Keyser's App., 57 Pa. 236; Riel v. Gannon, 161 Pa. 289; Rife v. Geyer, 59 Pa. 393; Jamison v. Dimock, 95 Pa. 52; White v. Patterson, 139 Pa. 429; Todd v. Campbell, 32 Pa. 250; Reno v. Moss, 120 Pa. 67; Wylie v. Mansley, 132 Pa. 65; Dougan v. Blocher, 24 Pa. 28; Piersol v. Neill, 63 Pa. 420; O'Hara v. Dilworth, 72 Pa. 397; Lewis v. Baker, 151 Pa. 529.

It is clear, upon principle and authority, that there was no merger of the equitable estate created by the articles of July 9,

1873, in the alleged legal title transferred by the deed of April 29, 1874: Carrow v. Headley, 155 Pa. 96; Wallace v. Blair, 1 Gr. 75; Broom's Leg. Maxims, 176; Pennock v. Eagles, 102 Pa. 295; Wagner v. Wanrich, 1 Woodw. 37.

It will be observed that from the beginning of the defendants' case to the end, every offer made to show the equitable estate in the defendants was met by the repeated and persistent objection that the apparent legal estate conveyed by the Montgomery deed could not be affected by the evidence offered, in utter forgetfulness of the settled rule that no careful conveyancer will ever pass a deed for firm property when made to a firm in its firm name; that, owing to the fact that in a partnership, " every addition or retirement of a member, though the business be conducted under the same name, ends the old and forms a new and distinct firm, . . . a deed to or by a firm, in a conventional name, either wholly fails to convey the legal title or is wholly defective: Bates Law of Part. sec. 174.

The fact that the plaintiffs' witnesses did not consent, directly or indirectly, to the sale of the property to the defendants, was immaterial.   There was evidence of an estoppel to be submitted to the jury in this case: 2 Beach Modern Equity, sec. 1, 105; Morgan v. R. R., 96 U. S. 716; Chapman v. Chapman, 59 Pa. 214; Woods v. Wilson, 37 Pa. 379; Logan v. Gardner, 136 Pa. 588.

Impressed with the conviction that, under the unimpeached and uncontradicted evidence in the case, the property in dispute at the time of its purchase by the defendants was the partnership property of S. B. & C. Hayes, and passed by the purchase to the defendants, we submit that there was nothing to leave to the jury upon the subject, and nothing to support their verdict for the plaintiffs: 1 Lindley on Part. 5th ed. Wentworth, ed. 1888; Shanks v. Klein, 104 U. S. 18.   Real estate belonging to a partnership is in equity treated as personalty, so far as is necessary to preserve the equities of the partners and partnership creditors; in other respects it is realty: West Hickory Mining Assn. v. Reed, 80 Pa. 38; Moderwell v. Mullison, 21 Pa. 257; Lacy v. Hall, 37 Pa. 360; Erwin's App., 39 Pa. 535; Billmyer v. Sleifer, 2 Pitts. 539; Abbott's App., 50 Pa. 234; Meason v. Kaine, 63 Pa. 335; Ebbert's App., 70 Pa. 79; Moore v. Wood, 171 Pa. 365; Warriner v. Mitchell,

128 Pa. 153; Collner v. Greig, 137 Pa. 606; Titusville Bank's App., 83 Pa. 203; Gunnison v. Loan Co., 175 Pa. 303; Foster's App., 74 Pa. 391.

*T. F. Birch,* for appellees.—In Pennsylvania the decisions have been uniform to the effect that when a conveyance is taken by the individuals composing a firm as tenants in common, they must be so considered: Lancaster Bank v. Myley, 13 Pa. 544 Hale v. Henrie, 2 Watts, 143; Ridgway, Budd & Co.'s App., 15 Pa. 181; Coder v. Huling, 27 Pa. 84; Erwin's App., 39 Pa. 535; Frye v. Shepler, 7 Pa. 91; Haslet v. Haslet, 6 Watts, 464; Chadwick v. Felt, 35 Pa. 305; Ebbert's App., 70 Pa. 79; Jones's App., 70 Pa. 169; Meily v. Wood, 71 Pa. 488; Foster's App., 74 Pa. 391; Geddes' App., 84 Pa. 485; Holt's App., 98 Pa. 257. It is not competent to show by parol that real estate conveyed to two persons as tenants in common is partnership property: McDermot v. Laurence, 7 S. & R. 438; Gunnison v. Erie Dime Savings & Loan Co., 157 Pa. 303; Harding v. Devitt, 10 Phila. 95. It is true, equity will in case of fraud or mistake reform a written contract so as to conform to the intention of the parties, Snyder v. May, 19 Pa. 235, but the party alleging the mistake must establish it by clear, precise and indubitable evidence: Stine v. Sherk, 1 W. & S. 195; Logue's App., 104 Pa. 136; Sylvius v. Kosek, 117 Pa. 67; Breneiser v. Davis, 141 Pa. 85; Van Horn v. Munell, 145 Pa. 497. It is not for the court to rule as a matter of law, that words amount to an estoppel in pais: Brubaker v. Okeson, 36 Pa. 519; Maynes v. Atwater, 88 Pa. 496.

Notice affecting the title to land or acts to be done upon it need only be given to the tenant in possession: Paden v. Akin, 7 W. & S. 456; Gregg v. Patterson, 9 W. & S. 197; McMahan v. McMahan, 13 Pa. 376; Story's Equity, secs. 64, 96, 97, 117, 243; Knouff v. Thompson, 16 Pa. 357; Hill v. Epley, 31 Pa. 331; Hill v. Meyers, 43 Pa. 170; Allen v. Allen, 45 Pa. 468; Lawrence v. Luhr, 65 Pa. 236; Thompson's App., 126 Pa. 367; McAninch v. Laughlin, 13 Pa. 371; Rogers v. Walker, 6 Pa. 374; Innis v. Templeton, 95 Pa. 262.

OPINION BY MR. JUSTICE WILLIAMS, November 9, 1896:

Sheldon B. Hayes and Charles Hayes were brothers and partners in business. The time when the partnership was entered

into does not appear but it seems to have been in existence and to have been successfully conducted for many years prior to 1873. In that year they entered into an agreement as partners for the purchase from Mrs. Martha B. Montgomery of the lot of land in the borough of Washington now in controversy, for the price of $3,100. The purchase money was paid out of partnership funds. They entered into possession as partners and conducted a partnership business upon it. The deed was made to them in 1874, and names the individual partners, S. B. Hayes and Charles Hayes, as the grantees. S. B. Hayes died in 1879, but his son Marshall took his place in the firm, and the business was continued for the benefit of the surviving partner, Charles Hayes, and the family of his deceased brother, no settlement having been made. Charles died in 1886, but the firm business was continued under the same firm name and without settlement until the death of Marshall Hayes in 1891. After his death his executors and the executors of Charles Hayes joined in a sale of the lot in controversy to the defendants for the sum of $6,300, treating it as a part of the property of the partnership. The purchasers paid $4,300 in hand upon the contract, of which $4,000 was at once applied to the payment of a partnership debt contracted in 1884, some two years before the death of Charles Hayes. For this debt the estate of Charles was liable, and the payment made upon it, at least to the extent of half of the amount, was in relief of the estate of Charles Hayes. The plaintiffs are the widow and heirs at law of Charles, and their claim in this case rests on the position that S. B. and Charles Hayes were tenants in common in this lot, and that the undivided one half of the title descended to them at the death of Charles Hayes as a part of his individual estate. The controlling question upon the trial in the court below was therefore whether this lot of land was held by S. B. Hayes and Charles Hayes as partnership property or as their individual property. This in the absence of any written declaration upon the subject by the grantees named in the deed was to be determined by their conduct and the ownership of the fund out of which the purchase money was paid. The question is not raised by creditors of either the firm or the individual members of it, but by the heirs at law of one of the partners against the executors of their ancestor. There is therefore no question of priority, or of no-

tice, to be considered, but simply one of ownership. What was the fact as to the ownership as between these brothers, S. B. and Charles Hayes?

The general rule is that if the real estate is bought with partnership funds and for partnership purposes it is partnership property notwithstanding the deed may be made to the individuals of whom the firm is composed. Bates on the Law of Partnership, par. 280. Our own cases holding this general doctrine are numerous and consistent. In Erwin's Appeal, 39 Pa. 535, the title was in the name of one of the partners, but the lot had been bought for partnership purposes and paid for out of partnership moneys. For some reason it had not been used by the firm, but it was held to be partnership property, and its proceeds were distributed among partnership creditors in preference to the creditors of the grantee named in the deed. So in Abbott's Appeal, 50 Pa. 234, this was the only question raised, and we said that the presumption arising from the fact that the deed was to the individual partners was rebutted by the facts that the land was bought for partnership purposes and paid for with partnership funds. Under such a state of facts the grantees named in the deed take the legal title in trust for their firm which pays the purchase money and for whose use the purchase is made. To the same effect are Meason v. Kaine, 63 Pa. 335. West Hickory Mining Association v. Reed, 80 Pa. 38. Shafer's Appeal, 106 Pa. 49, states the rule very fully, and that payment of the purchase money out of the partnership funds for property bought for firm uses rebuts the presumption arising from a deed to the individual members of the firm. Warriner v. Mitchell et al, 128 Pa. 153, takes the distinction between a contest made by creditors and one made by the partners with each other. In the latter case it was held that land bought with partnership funds, used for partnership purposes, and treated as partnership property, is partnership assets notwithstanding the title may be held by the individual partners. The same rule was stated in Collner v. Greig, et al., 137 Pa. 606. The importance to be given to the fact that the property had been bought for some partnership purpose is illustrated by Coder et al. v. Huling, 27 Pa. 84, where it was held that if the property had not been purchased for the use of the firm the payment of the purchase money, standing alone, would not rebut

the presumption arising from a deed made to the individual partners. In this case therefore we are of opinion that, as the plaintiff relied upon the presumption arising from the deed, the learned judge would have been warranted in telling the jury that if satisfied that the land in controversy had been bought for the use of the firm of S. B. and Charles Hayes, had been paid for with partnership moneys, and treated by them during their lives as partnership property, the presumption arising from the deed was fully rebutted, and the plaintiffs could not recover against the vendee of the representatives of the partnership. This view of the main question presented on this record makes the treatment of the several assignments of error separately a matter of little importance, but as the case goes back it may be best briefly to consider them. The first assignment is sustained. It relates to an effort to show notice to the trustees of the Baptist church. Proof of a conversation between one of the plaintiffs and a woman who was not even a member of the church, but whose husband was, although he was not one of the trustees, is wholly incompetent for the purpose of showing notice. The assignments numbers two to eleven inclusive are to the admission of deeds for other property having no relation to the property in controversy, but purchased at various times by the firm or one of its members for purposes not disclosed by the testimony. These assignments are sustained. Numbers twelve, thirteen and fourteen are to the admission of the testimony. of the several plaintiffs to show that they had not assented directly or indirectly to the sale of the property to the trustees of the Baptist church. This could only be competent in case their assent had been alleged by the defendant. It is wholly immaterial whether they gave or withheld their assent if this was partnership property. The twenty-first and twenty-third assignments relate to the character of the proof required in cases where a written instrument is alleged to be different from the agreement actually made by the parties, and its reformation is sought. The general rule in such cases is as stated, but the simple affirmance of the points embodied in these assignments was upon the evidence in this case calculated to mislead the jury. The evidence of the plaintiff was the deed from Montgomery and wife and the presumption arising upon it. The proofs of the defendant showed the facts necessary to rebut that

presumption and establish the title of the partnership. This evidence was clear and precise, and, as we understand, no effort was made to reply to it, or throw doubt upon it. If so it may be said that, subject to the credibility of the witnesses, it was indubitable. If the jury were satisfied by it that the partners bought the lot for partnership uses, with partnership money and treated it as partnership property, then the prima facies of the deed was successfully overcome and the title of the partnership established. It was not error to affirm these points, as we have already said, but it would have been better to have explained the extent of the application of the rule invoked in this case upon the evidence that was before the jury.

The remaining assignments of error relate to some phase of the general question which we have already considered and do not require to be separately treated.

The judgment is reversed and a venire facias de novo awarded.